COMMONWEALTH *vs.* ISMAEL BENITEZ
RODRIGUEZ.

Suffolk.    May 4, 1976. — July 15, 1976.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & WILKINS, JJ.

*Homicide. Self Defense. Practice, Criminal,* Charge to jury. *Constitutional Law,* Due process of law. *Evidence,* Presumptions and burden of proof.

Where the defendant at a murder trial presented sufficient evidence to raise the issue of self-defense, the Commonwealth was required, as matter of due process, to prove beyond a reasonable doubt that the defendant did not act in self-defense. [687-689]

At a murder trial, where the defendant presented sufficient evidence to raise the issue of self-defense, the judge erred in refusing to instruct the jury that the burden was on the Commonwealth to prove beyond a reasonable doubt that the defendant had not acted in self-defense. [689-692]

In any trial or retrial after the date of this decision, where a defendant provides sufficient evidence to raise the issue of self-defense, it is required, upon timely request by the defendant, that an instruction be given that the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant did not act in self-defense. [692]

INDICTMENT found and returned in the Superior Court on October 11, 1973.

The case was tried before *Leen,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Owen Gallagher* for the defendant.

*Louis M. Nordlinger,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.    The defendant, Ismael Benitez Rodriguez was indicted for murder in the second degree for the killing of Ismael Melendez (victim). At trial, Rodriguez admitted that he had killed the victim, but claimed that

he had acted in self-defense. The jury found Rodriguez guilty of manslaughter and the judge sentenced him to a term of imprisonment of three to six years. The case is before us pursuant to the provisions of G. L. c. 278, §§ 33A-33G.

Rodriguez's sole assignment of error on appeal is the judge's refusal to instruct the jury that the Commonwealth bore the burden of showing beyond a reasonable doubt that the defendant did not act in self-defense. We conclude that the judge erred,[1] in the circumstances of this case, by refusing to give the requested instruction. Accordingly, we reverse.

The killing occurred during the afternoon of July 6, 1973. The victim was the brother of one Tulita Garcia, who had had an affair with Rodriguez some months before the shooting. On the afternoon in question the victim was driving Tulita, three other adults and two children to a record store. As they approached Rodriguez's home on Centre Street in Jamaica Plain, they saw Rodriguez in the street in front of his home and they stopped. At this point there are essentially two different versions of what happened.

Tulita and two of the others in the victim's car testified that Tulita or the victim asked Rodriguez for his key to Tulita's apartment. Rodriguez, accordingly to this version, started swearing, insulted Tulita and then went into his house. About the same time, Rodriguez's wife started screaming and swearing at Tulita from the window. Shortly thereafter Rodriguez's wife, sister-in-law and mother-in-law came out of the house and attacked Tulita. The victim then went to the trunk of his car and removed something (although none of these witnesses saw what it was). Rodriguez reappeared from his house with a shotgun and, after having words with the victim, shot him. Accord-

---

[1] The term "erred" and the term "error" (as used, *infra*) are unavoidable, but in an important sense they are not apt in referring to the rulings of the judge. He was ruling on matters which, surprisingly enough, raised first-instance issues. Also, he was ruling without the assistance of *Mullaney* v. *Wilbur,* 421 U.S. 684 (1975), on which we rely, *infra.*

ing to this version, Rodriguez also threatened to shoot Tulita.

On the other hand four witnesses, including Rodriguez, his wife, and two neighbors of Rodriguez, all testified that a fight occurred, but they indicated that Tulita was the aggressor. They stated that she came after Rodriguez's wife and cut her hand with a knife.[2] They testified that Rodriguez went upstairs after the fight started and that, when he returned with his shotgun, the victim pulled a gun (removed from the trunk) on Rodriguez. Both men apparently then lowered their guns, but shortly thereafter the victim raised his gun and at that point Rodriguez shot him.

Much of the contradictory testimony ends after the shooting. It appears that Rodriguez then went back to his house, handed his gun to a neighbor and waited for the police to arrive. After they arrived Rodriguez was arrested, and the victim, Tulita, and Mrs. Rodriguez were taken to a hospital. The victim was dead, having been killed by the shot from Rodriguez's gun. A hospital report showed that Mrs. Rodriguez's hand had been cut and that there were toothmarks on her arm and breast. Tulita appears not to have been injured, but an examination of her revealed a small knife in her brassiere.[3]

The only other testimony of importance involved the victim's gun. Although it was a "starter's pistol" and therefore incapable of being fired at the time of the killing, a ballistician testified that in all other respects, including appearance, it was similar to an operational gun and that it could have been made operational.

---

[2] These witnesses further testified that Tulita and the victim had often driven to Rodriguez's house during the two months between the end of Tulita and Rodriguez's affair and the killing, and that Tulita and the victim yelled obscene words at Rodriguez and his wife. This series of visits was denied by Tulita and others testifying for the Commonwealth.

[3] This was the testimony of a policeman, who stated that the knife was given to him by a doctor at Boston City Hospital. The knife was not among the exhibits at trial, apparently having been lost after the police took custody of it. Police records showed that the knife was received by them and put into storage for trial.

As previously indicated, Rodriguez's sole contention at trial was that he acted in self-defense. Because there was sufficient evidence to raise the issue, see *Commonwealth v. Edmonds,* 365 Mass. 496, 498-499 (1974), the judge instructed the jury on self-defense. He declined, however, to instruct them explicitly that the Commonwealth had the burden of showing beyond a reasonable doubt that the defendant did not act in self-defense. In order to determine whether this was error, we must first decide whether the Commonwealth in fact bears such a burden.

1. It appears that we have not previously been asked to decide which party bears the burden of persuasion on the issue of self-defense.[4] Although there may have been a period during which such a choice could be made solely on grounds of policy, we have recently acknowledged that the Supreme Court's decision in *In re Winship,* 397 U.S. 358 (1970), establishes the constitutional parameters on allocation of the burden of persuasion in criminal cases. See *Commonwealth v. Kostka, ante,* 516, 531-532 (1976). We thus recognize at the outset that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship, supra* at 364.

We believe that, when the issue of self-defense is prop-

---

[4] In *Commonwealth v. York,* 9 Met. 93, 124 (1845), a case involving the burden of proof on circumstances which would negate malice and result in a verdict of manslaughter, Chief Justice Shaw observed: "The proof establishing the necessity for ... [the] taking of [a] life, in self-defence, must be satisfactorily made out. Raising a doubt would be insufficient." Because this statement was unnecessary to the result in *York,* it may be classified as dictum. We note that the specific proposition for which *York* stands — that the defendant must prove mitigating circumstances such as provocation by a preponderance of the evidence — has been found to violate due process. *Mullaney v. Wilbur,* 421 U.S. 684, 704 (1975). In addition, the general proposition for which *York* stands — that the defendant bears the burden of proof on what may be termed "affirmative defenses" — has been the subject of scholarly criticism. See Fletcher, Two Kinds of Legal Rules: A Comparative Study of Burden-of-Persuasion Practices in Criminal Cases, 77 Yale L.J. 880 (1968).

erly before the trier of fact,[5] the Commonwealth must, as matter of due process, prove beyond a reasonable doubt that the defendant did not act in self-defense. We reach this conclusion as the result of two approaches to the question of what constitutes a "fact" necessary to prove the crime charged within the meaning of *Winship*.

Under the first approach, we note that, although *Winship* is not "limited to a State's definition of the elements of a crime," *Mullaney* v. *Wilbur*, 421 U.S. 684, 699 n.24 (1975), it is "clear that all of the elements necessary to prove commission of the offense charged are 'facts' within the meaning of *Winship*." *Commonwealth* v. *Kostka, supra* 532 at n.16. We have consistently defined manslaughter and murder as "unlawful" killings (see *Commonwealth* v. *McCauley*, 355 Mass. 554, 559 [1969]; *Commonwealth* v. *Webster*, 5 Cush. 295, 304 [1850]), and we have long recognized that self-defense negates the element of "unlawfulness." Homicide "may be lawful or unlawful . . . . It may also be justifiable, and of course lawful, in necessary self-defence." *Commonwealth* v. *Webster, supra* at 303.

If a defendant raises a reasonable doubt in the minds of the jurors whether he acted in self-defense, a reasonable doubt also necessarily arises as to whether the killing was unlawful. In such a case, acquittal is appropriate. Thus, in order to establish unlawfulness and thereby prove its case, the Commonwealth must show the absence of self-defense (lawfulness) beyond a reasonable doubt. Cf. *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975).

This result may also be reached by an alternate approach to the definition of the term "fact." We have recently held that, after the issue of insanity has been raised by sufficient evidence, the defendant's sanity becomes a "fact" of the crime charged which the Commonwealth

---

[5] The issue may be raised either through evidence presented by the prosecution as part of its case-in-chief or through evidence brought forth by the defense. See Annot., 43 A.L.R.3d 221, 232 n.8 (1972). Cf. *Commonwealth* v. *Kostka, ante,* 516, 527 n.7 (1976); *Commonwealth* v. *York,* 9 Met. 93, 123 (1845); *Commonwealth* v. *Johnson,* 3 Mass. App. Ct. 226, 232 (1975).

must prove beyond a reasonable doubt. *Commonwealth* v. *Kostka, ante,* 516, 531-532 (1976). And, in *Commonwealth* v. *Leaster,* 362 Mass. 407, 416-417 (1972), although our holding was not couched in constitutional terms, we recognized that the Commonwealth must disprove a defendant's proffered alibi beyond a reasonable doubt. See also *Stump* v. *Bennett,* 398, F.2d 111 (8th Cir.), cert. denied, 393 U.S. 1001 (1968). Finally, the Supreme Court has recently indicated that the absence of heat of passion is a *Winship* "fact" which the prosecution must prove beyond a reasonable doubt. *Mullaney* v. *Wilbur, supra.* We see no distinction between, on the one hand, sanity, disproof of alibi and the absence of passion as "facts" of a crime charged subject to the reasonable doubt standard, and, on the other hand, the absence of self-defense as such a "fact." Accordingly, on such an analysis, we reach the same result: the Commonwealth must bear the constitutional burden of proving that the defendant did not act in self-defense.[6] The question we must now consider is whether the judge's charge to the jury in this case, which did not expressly state that the Commonwealth bore the burden of proving that the defendant did not act in self-defense, satisfied the dictates of *Winship* by conveying that burden in general terms. See generally *Commonwealth* v. *Walker, ante,* 548, 579 n.23 (1976); *Commonwealth* v. *Leaster,* 362 Mass. 407, 416-417 (1972).

2. In his charge, the trial judge explained the presumption of innocence to the jury, informed them several times that the Commonwealth had to prove the crime charged beyond a reasonable doubt, and instructed them on the elements of self-defense. The judge never explicitly stated

---

[6] The position we adopt today, which we believe to be constitutionally compelled, is the "majority" position among the various jurisdictions. See *Mullaney* v. *Wilbur,* 421 U.S. 684, 702 n.30 (1975); Annot., 43 A.L.R.3d 221 (1972). The Model Penal Code also supports, on pre-*Winship* policy grounds, the result we reach. See Model Penal Code §§ 1.12, 1.13 (9), 3.04 and 3.05 (Proposed Official Draft 1962). See also Comments to § 3.01 (Tent. Draft No. 8, 1958). The policy advantages of adopting the majority position are discussed in *State* v. *Millett,* 273 A.2d 504, 506-508 (Me. 1971).

Commonwealth *v.* Rodriguez.

that the defendant had the burden of persuasion on that issue. However, as we have already indicated, the judge also declined to instruct the jury explicitly that the Commonwealth had to show the absence of self-defense beyond a reasonable doubt.

In arguing that the charge in the instant case was constitutionally insufficient, Rodriguez points to a number of statements which, he argues, had the effect of instructing the jury that the defendant has the burden of persuasion on the issue of self-defense. The first such statement appears at the beginning of the charge on self-defense. The judge stated that Rodriguez sought *"to justify his action*[7] on the ground of self-defense." The judge continued: "Now, if *on the facts you were to find* that the shooting of the deceased was done in self-defense, the defendant would be entitled to an acquittal . . . ." Somewhat later the jurors were instructed that they were to *"determine whether or not* [the killing] was done in self-defense." After explaining some of the factors relevant to such a determination the judge said: "Now, *if you find* that the defendant had a reasonable apprehension of death or grave bodily harm to himself or a member of his family and that he availed himself of every reasonable avenue of escape . . . and that the means he employed were reasonable under all the circumstances, then you must be warranted to finding the defendant not guilty." Finally, in instructing the jury as to the alternative verdicts they could render, the judge concluded: "[T]he defendant could be found not guilty *if you are satisfied on the evidence* and the reasonable inferences that you draw from these facts as you find them, that the defendant acted within the permissible limits of self-defense . . . ."

In determining whether these statements denied Rodriguez due process, "we accept at the outset the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in

[7] We have supplied the emphasis here and in the other quoted portions of the charge.

the context of the overall charge." *Cupp* v. *Naughten,* 414 U.S. 141, 146-147 (1973), citing *Boyd* v. *United States,* 271 U.S. 104, 107 (1926). See *Commonwealth* v. *Walker, ante,* 548, 579 n.23 (1976); *Commonwealth* v. *Gibson,* 368 Mass. 518, 527-528 (1975); *Commonwealth* v. *Leaster,* 362 Mass. 407, 416-417 (1972); *Commonwealth* v. *Redmond,* 357 Mass. 333, 342-343 (1970).

After reviewing the entire charge, we conclude that the judge's declination, in the circumstances of this case,[8] to give the proffered instruction, was erroneous and that the conviction must be set aside. We believe that the over-all instructions, as given, were likely to have confused the jury and to have suggested to them that the defendant had an affirmative burden to prove self-defense, despite the fact that the instructions did not expressly state that the defendant had such a burden.

Furthermore, the charge appears to have failed to impress on the jury the critical nexus between the elements of the crime charged and the absence of self-defense. Although the judge's final statement to the jury emphasized that the Commonwealth had to prove its case beyond a reasonable doubt, that statement was preceded by two statements which indicated that the Commonwealth's burden was to prove its case to the jury's "satisfaction" beyond a reasonable doubt. Use of the term "satisfaction" may have been more than confusing in this context as it was the same term used to describe the defendant's obligation with respect to self-defense.

Accordingly, we hold that, in the context of the charge given in this case, it was error not to give the requested instruction. That instruction, if given, would have informed the jury in express terms that since there was sufficient evidence to raise the issue of self-defense, the Commonwealth had the burden of showing beyond a rea-

---

[8] We need not, and we do not, express any opinion as to what the result might have been in this case had the judge not made several references to the jury's obligation to "find" certain factors present and to be "satisfied" that the defendant acted in self-defense before returning a verdict of not guilty.

sonable doubt that the defendant did not act in self-defense.

3. Because we have determined that the Commonwealth must bear the burden on the self-defense issue, we think it required that, when a timely request is made[9] in any trial or retrial after the date of this decision, an instruction to that effect be given, provided that sufficient evidence has been presented to raise the issue. See *Commonwealth v. Mutina,* 366 Mass. 810, 823 n.12 (1975); *Commonwealth v. Rodriquez,* 364 Mass. 87, 98 (1973). An appropriate instruction is set out in the margin.[10]

4. Retrial of this case should be in accordance with the reasoning of this opinion.

*Judgment reversed.*
*Verdict set aside.*

---

[9] In the circumstances of this case we have no occasion to comment on other circumstances which might require a judge to give such a charge even in the absence of such a request.

[10] "If evidence of self-defense is present, the [Commonwealth] must prove beyond a reasonable doubt that the defendant did not act in self-defense. If you find that the [Commonwealth] has failed to prove beyond a reasonable doubt that the defendant did not act in self-defense, you must find the defendant not guilty. In other words, if you have a reasonable doubt whether or not the defendant acted in self-defense, your verdict must be not guilty." 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 43.19, at 548 (2d ed. 1970).

This instruction deals only with the question of burden of proof. For a more comprehensive discussion of the principles governing self-defense, see *Commonwealth* v. *Kendrick,* 351 Mass. 203, 210-212 (1966).