**Richard Joseph GAGNE**

v.

**Larry R. MEACHUM.**

**Civ. A. No. 75–4777–F.**

United States District Court,
D. Massachusetts.

Nov. 30, 1978.

---

William K. Danaher, Jr., Springfield, Mass., for plaintiff.

Matthew J. Ryan and John J. McDonough, Springfield, Mass., for defendant.

MEMORANDUM

FREEDMAN, District Judge.

Richard Joseph Gagne was convicted of murder in the second degree on February 20, 1973 [1] and is now serving a life sentence in a Massachusetts correctional facility. Relying on *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) ("*Mullaney*"), which was given full retroactive effect in *Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977) ("*Hankerson*"), Gagne seeks federal habeas corpus relief from that conviction. After considering the issues presented, I deny Gagne's petition for a writ of habeas corpus *ad subjiciendum*.

Gagne has persistently challenged the validity of his conviction. A week after the jury returned its verdict, Gagne filed a motion for a new trial which was denied by the trial judge on July 17, 1973. Gagne then appealed to the Supreme Judicial Court of Massachusetts (the "SJC"). The SJC affirmed Gagne's conviction on April 28, 1975. *Commonwealth v. Gagne*, 367 Mass. 519, 326 N.E.2d 907 (1975). Gagne's request for a rehearing before the SJC was denied on May 28, 1975.

Gagne then filed a petition for a writ of habeas corpus in this court. Because the SJC had not been afforded an opportunity to consider Gagne's claims in light of *Mullaney*, which was decided more than a week after the SJC denied Gagne's request for a rehearing on his appeal, I denied Gagne's habeas corpus petition under the doctrine of exhaustion of state judicial remedies. *Gagne v. Meachum*, 423 F.Supp. 1177 (D.Mass.1976). Gagne then filed a second petition for rehearing with the SJC. The SJC denied the petition for rehearing and suggested that Gagne file a petition for writ of error. Gagne did so. The SJC then reviewed his claims in light of *Mullaney* and

its own decision in *Commonwealth v. Rodriguez*, 352 N.E.2d 203 (Mass.1976) ("*Rodriguez*"), and affirmed the conviction. *Gagne v. Commonwealth*, 377 N.E.2d 919 (Mass.1978). Gagne then revived his petition for a writ of habeas corpus by filing a motion for rehearing in this court. I allowed the motion and heard arguments on the merits of the habeas corpus petition itself, as modified by the motion for rehearing, on August 24, 1978.

For convenience, I state here without the traditional indentation the summary of the testimony given by the SJC in its decision on Gagne's initial appeal, *Commonwealth v. Gagne, supra*, 326 N.E.2d at 908–909. The footnotes are mine: The defendant was a pharmacist employed in a pharmacy owned by his father. On the night of the homicide, the defendant closed the store at approximately 9:00 p. m., but remained working in the prescription area in the rear. Sometime after 10:00 p. m., the defendant heard glass break in the front of the store. He drew his revolver,[2] went to the front to investigate and found a window broken. He opened the door and searched the area outside but was unable to find anyone. He returned to the store and started to call the police when he heard the sound of someone running inside the pharmacy. He saw someone trying to get out the front door who then turned toward the defendant, said "son-of-a-bitch," and pointed a gun in his direction. The defendant took his revolver out of his pocket and fired two shots.[3] The victim fell and the defendant immediately called the police. The defendant was taken to the police station, where he gave a statement disclosing essentially the facts set out above.

It was subsequently revealed that the defendant had known the victim prior to the shooting and had attempted to assist

---

1. This was Gagne's second trial on the murder charge. The jury at Gagne's first trial were unable to agree on a verdict and the trial judge declared a mistrial.

2. There were apparently two guns involved in this case, Gagne's and that of the victim. The victim had obtained his gun only a few days

before the homicide. *Compare Gagne v. Commonwealth, supra*, 377 N.E.2d at 923 with *Commonwealth v. Gagne, supra*, 326 N.E.2d at 912.

3. Only one shot struck the victim. *See Gagne v. Commonwealth, supra*, 377 N.E.2d at 923.

him with some problems the victim was having with Provincetown authorities regarding his position as a pharmacist there. The victim had attended the pharmacy school where the defendant taught, and in fact had had the defendant as a teacher. Approximately two months before the shooting, the defendant had informed the victim that he could not help him.

In his statement to the police, the defendant was very specific as to everything he had done on the night of the shooting. However, the day after the incident, he notified police that he forgot to tell them about a telephone call from Mrs. Helen A. Simkins, with whom he was talking when he heard the glass break, and who held the line open while he made his search. Mrs. Simkins testified in the defendant's behalf.

The defendant also had neglected to tell police in his statement about one Frederick Wasilenko, who the defendant later claimed had come into the store between 10:00 and 10:20 p. m. to purchase some items. The defendant told police about Wasilenko after the police had been informed by one William R. Roberts that he had seen the defendant and another man conversing in the store between 10:15 and 10:30 p. m. Roberts described the man he had seen in the store, and although Wasilenko, whom he had known for many years, fit the description, Roberts testified that he was certain it was not Wasilenko.

The defendant's testimony at the trial was substantially the same as his prior statement to police, except for the telephone call from Mrs. Simkins and the visit by Wasilenko. There was some inconsistency in the timing of the calls and visits, but otherwise defense witnesses corroborated the defendant's account of the night in question.

The defendant contends that he was surprised by an intruder whose identity was not known to him at the time and upon being faced with a gun he reacted in self-defense by shooting his assailant. The Commonwealth's contention was somewhat different: It contended that the defendant and the victim had a pre-arranged meeting,

something went wrong, and the defendant shot and killed the victim. The case went to the jury with instructions on murder in the first degree, murder in the second degree, and manslaughter, and the jury returned a verdict of guilty of murder in the second degree.

Gagne's argument here, in essence, is that the trial judge's charge, which included instructions regarding the inference of malice, relieved the Commonwealth of its burden of proving malice beyond a reasonable doubt and placed on Gagne the burden of proving the non-existence of malice. In the words of the SJC, "[s]uch a shift of the burden of persuasion would be constitutionally impermissible." *Gagne v. Commonwealth, supra,* 377 N.E.2d at 921 (citing *Hankerson, supra,* and *Mullaney, supra*). Gagne also contends that the SJC, in its decision on his petition for writ of error, *Gagne v. Commonwealth, supra,* applied a more lenient constitutional standard than that applied to cases tried after the *Mullaney* decision and argues that the SJC decision "emasculates" *Mullaney* by examining the jury charge in its entirety rather than by determining whether the charge "in fact" placed the requisite burden on the Commonwealth. Finally, Gagne contends that the jury's verdict was against the weight of the evidence.

As I noted in my order denying Gagne's habeas corpus petition on the grounds of failure to exhaust state judicial remedies, *Gagne v. Meachum, supra, Mullaney* was merely an application of the constitutional principle enunciated by the Supreme Court in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ("*Winship*"), wherein the Court said:

Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

397 U.S. at 364, 90 S.Ct. at 1073. In *Mullaney,* the Court applied this principle—that

due process requires the prosecution to prove each element of a crime beyond a reasonable doubt—to a Maine rule requiring a defendant charged with murder to prove, by a preponderance of the evidence, the mitigating defense of "heat of passion on sudden provocation," in order to reduce the crime to manslaughter. Finding the Maine rule to be inconsistent with *Winship*, the Court said:

> Maine law requires a defendant to establish by a preponderance of the evidence that he acted in the heat of passion on sudden provocation in order to reduce murder to manslaughter. Under this burden of proof a defendant can be given a life sentence when the evidence indicates that it is *as likely as not* that he deserves a significantly lesser sentence. This is an intolerable result . . . .

421 U.S. at 703, 95 S.Ct. at 1892 (emphasis in original).

 The broader import of *Mullaney* is that the burden of proof as to an essential element[4] of a crime may not, consistent with the Due Process Clause, be shifted to the defendant. *See Patterson v. New York*, 432 U.S. 197 at 215, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). "Malice aforethought" is an essential element of the crime of murder in the second degree in Massachusetts.[5] *See, e. g., Commonwealth v. Scanlon*, 364 N.E.2d 1196 at 1200 (Mass.1977). *See also*, 32 *Mass.Practice* § 174 at 75 (Nolan, Criminal Law 1976). Under *Mullaney*, therefore, in any murder prosecution, the Commonwealth must prove the element of malice beyond a reasonable doubt and the burden of proof on the issue of malice may not be shifted to the defendant.[6] Against this background, I turn to consideration of Gagne's claims.

 I consider first, and reject, Gagne's contention that the SJC "emasculate[d]" *Mullaney* by examining the jury charge as a whole rather than determining whether the trial judge "in fact" placed the requisite burden on the Commonwealth.[7] The prac-

---

**4.** I note that *Winship* and *Mullaney* do not require that the prosecution prove beyond a reasonable doubt the nonexistence of all potentially mitigating factors. For example, within certain apparently unsettled constitutional limits, a state may define affirmative defenses and place on the defendant the burden of proving them. *See, e. g., Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (New York rule placing on defendant the burden of proving affirmative defense of extreme emotional disturbance does not violate the Due Process Clause); *Buzynski v. Oliver*, 538 F.2d 6 (1st Cir.), *cert. denied*, 429 U.S. 984, 97 S.Ct. 503, 50 L.Ed.2d 596 (1976) (anticipating *Rivera v. Delaware*, 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976)).

**5.** The law of homicide in Massachusetts tracks the traditional common law formulation. *See Commonwealth v. Balliro*, 349 Mass. 505, 209 N.E.2d 308 (1965). *See generally*, W. LaFave & A. Scott, Jr., *Criminal Law* 528–534 (1972). Murder is the unlawful killing of a human being with malice aforethought. *See* 32 *Mass.Practice* § 172 at 71 (Nolan, Criminal Law 1976); Mass.Gen.Laws ch. 277, § 39. Murder committed with premeditation, extreme atrocity or cruelty, or in the commission or attempted commission of a crime punishable by death or life imprisonment is first degree murder. All other murder is in the second degree. Mass. Gen.Laws ch. 265, § 1. Manslaughter is the unlawful killing of a human being without malice aforethought. *See, e. g., Commonwealth v.*

*Beaulieu*, 333 Mass. 640, 133 N.E.2d 226 (1956), 32 *Mass.Practice, supra* § 201 at 92.

**6.** The SJC has consistently recognized that the burden of proving malice in a murder prosecution lies with the Commonwealth and that this burden may not be shifted to the defendant. *See, e. g., Commonwealth v. Harris*, 380 N.E.2d 642 (Mass.1978); *Gagne v. Commonwealth, supra; Commonwealth v. Collins*, 373 N.E.2d 969 (Mass.1978); *Commonwealth v. Stokes*, 374 N.E.2d 87 (Mass.1978); *Commonwealth v. Greene*, 362 N.E.2d 910 (Mass.1977); *Commonwealth v. Johnson*, Mass., 361 N.E.2d 212 (1977); *Rodriguez, supra*.

**7.** In reviewing Gagne's *Mullaney* claims, the SJC followed the roadmap it had previously drawn in *Rodriguez* and *Commonwealth v. Stokes*, 374 N.E.2d 87 (Mass.1978). In *Rodriguez*, the SJC applied what it called the "well established proposition" that the giving or the failure to give a single instruction "must be viewed in the context of the overall charge." *Rodriguez, supra*, 352 N.E.2d at 207 (quoting *Cupp v. Naughton*, 414 U.S. 141 at 146–147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). The SJC found that the trial judge's failure to give a requested instruction that the Commonwealth must prove beyond a reasonable doubt that the defendant did not act in self-defense was error in the context of the overall charge given. The SJC specifically declined to comment on when,

tice of examining the giving or the failure to give a jury instruction in the context of the charge as a whole is firmly established. *See, e. g., United States v. Park,* 421 U.S. 658 at 674, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975); *Boyd v. United States,* 271 U.S. 104 at 107, 46 S.Ct. 442, 70 L.Ed. 857 (1926); *United States v. Harrigan,* 586 F.2d 860 (1st Cir. 1978); *United States v. Garcia,* 562 F.2d 411 at 416 (7th Cir. 1977); *Commonwealth v. Leaster,* 362 Mass. 407 at 416–417, 287 N.E.2d 122 at 128 (1972). *Cf. Dunn v. Perrin,* 570 F.2d 21 at 25 (1st Cir.), *cert. denied,* 437 U.S. 910, 98 S.Ct. 3102, 57 L.Ed.2d 1141 (1978) (finding obfuscation of "one of the 'essentials of due process and fair treatment' " in the cumulative effect of three erroneous instructions).[8] *Mullaney,* which states a substantive rule of constitutional law, does not change the established practice for appellate review of jury instructions. *See Mullaney, supra* at 690–691, n. 10; *United States v. Harrigan, supra; Hallowell v. Keve,* 555 F.2d 103 at 109–111 (3rd Cir. 1977).

█ Federal court review of state trial jury instructions on collateral attack is governed by similar principles.[9] "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughton,* 414 U.S. 141 at 146–147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). *See Dunn v. Perrin, supra; Hallowell v. Keve, supra.* I will therefore examine the *Gagne* jury charge in its entirety, as did the SJC.

The judge at Gagne's trial first gave the jury general instructions describing their role, the role of the court and the attorneys. He told them that they, and they alone, were the finders of fact; he told them what is and what is not evidence to be considered by them in finding the facts; and he told them, in general terms about inferences "which naturally and reasonably and logically follow[ ]" from facts. Tr. at 755. The judge gave the jury general instructions about the credibility of evidence. He then told them about the presumption of innocence and the Commonwealth's burden of proving the defendant's guilt beyond a reasonable doubt. The judge described clearly, accurately and repeatedly that the Commonwealth must prove the defendant's guilt beyond a reasonable doubt. For example, the judge said:

> A defendant need not present any evidence of his innocence, but he may rest inactive and secure until the Common-

in the absence of a request, such a charge might be required. *Stokes* dealt with that issue.

In *Stokes,* the defendant neither requested an instruction on the burden of proof on the issue of self-defense nor objected to the charge as given. Although affirming the conviction, the SJC declined to hide behind the Supreme Court's suggestion in *Hankerson* that, in cases tried before *Mullaney,* "[t]he States, if they wish, may be able to insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error." *Hankerson, supra,* 432 U.S. at 244, n. 8, 97 S.Ct. at 2346. The SJC concluded that, "with respect to trials occurring before *Mullaney,* a specific objection to the judge's instructions on burden of proof need not be shown in order to secure appellate review." *Stokes, supra,* 374 N.E.2d at 92. After answering the threshold question of the availability of appellate review to a pre-*Mullaney* defendant who did not object to the judge's instructions on burden of proof, the SJC reiterated its belief that "[t]he charge to the jury must be examined in its entirety to determine whether the constitutional requirements have been met." *Stokes, supra,* 374 N.E.2d at 93.

8. There may well be situations where a particular erroneous instruction is so offensive as to require reversal without regard to the remainder of the charge. *See Cupp v. Naughton,* 414 U.S. 141 at 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), citing *Cool v. United States,* 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972). *Cf. United States v. Harrigan, supra* ("the error was of such a nature that it could not be erased or diminished by the balance of the charge"). As might be surmised, the failure to give an instruction is less problematical, in general, than the giving of an obviously improper instruction. *Henderson v. Kibbe,* 431 U.S. 145 at 155, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977).

9. I note, however, that "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe,* 431 U.S. 145 at 154, 97 S.Ct. at 1736–37 (1977).

wealth goes forward with the evidence that proves his guilt.

This presumption of innocence means that a defendant is entitled to have a verdict of not guilty ordered by the Court, unless the evidence is sufficient to warrant a finding by the jury that he is guilty beyond a reasonable doubt.

This presumption of innocence also means that the defendant is entitled to have a verdict of not guilty rendered by the jury, unless the evidence actually convinces the jury beyond a reasonable doubt that the defendant is guilty, even though this doesn't result from a presumption of innocence.

Tr. at 765–766. The judge also said:

In order for a jury to be warranted in finding a defendant guilty in a criminal case, the Commonwealth must prove the guilt of such a defendant beyond a reasonable doubt and likewise must prove beyond a reasonable doubt all the essential elements of the crime with which the defendant is charged.

Tr. at 769–770. The judge then discussed the meaning of proof beyond a reasonable doubt.

After discussing the reasonable doubt standard, the judge turned to the substantive law of homicide. It is the instructions in this part of the charge—specifically instructions regarding the presumption or inference of malice—on which Gagne's *Mullaney* claims focus. The judge told the jury that: "[m]urder is the unlawful killing of a human being with malice aforethought, and if one does it intentionally, that is without mitigation or excuse, taking the life of another human being, he does it maliciously," (Tr. at 779) and that "malice is implied in every deliberately proven act against another . . . ." Tr. at 780–781. The judge also told the jury that:

*Now a killing may be malicious and consequently murder, even though the slayer did not want to cause death.* If a man intentionally and without legal justification or excuse or extenuation uses upon the body of another a force, for example à bullet from a revolver that is (sic) used will probably do grievous bodily harm to that other person and will create a plain and strong likelihood that the other person would die as a result, the act is malicious within the meaning of the law, *even though the doer of the act was indifferent as to whether death would result or even wished or hoped that death would not result.*

Tr. at 781–782 (emphasis added).[10]

The judge then continued:

Now, the word malice, therefore, is used in a very technical sense. It not only includes hatred and ill will or revenge, but every other unjustifiable motive. It is a thing done with a malicious mind as when the act has been attended with such circumstances as to carry in them the plain implication of a heart, regardless of social duty, a heart bent upon mischief. It is enough if the killing was intentional and was without legal excuse or justification.

Now, bear in mind, ladies and gentlemen that I'm speaking of murder generally and not the degrees of murder. The condition of mind, which permits one to do injury without excuse or justification, is malice in the contemplation of the law. When the fact of malice is shown there is nothing to rebut the natural presumption of malice for the rational probability is that a man of sound mind intends the probable and natural consequences of his act.

Tr. at 782–783.

■ Viewed in the context of the entire charge, the instructions of which Gagne complains[11] do nothing more than *permit*

**10.** The emphasized portion of the quoted instruction was omitted by Gagne from his petition for rehearing. I note that an instruction may have a different meaning if read out of context.

**11.** I note that Gagne neither requested an instruction on the burden of proof on the issues of malice or self-defense, nor objected to the charge as given in these respects. Gagne did raise these issues in his motion for a new trial. See n. 7, *supra.*

the jury to *infer* the existence of malice from the intentional doing of an unlawful act (in this case the use of deadly force) coupled with the absence of justification (self-defense) or mitigation (heat of passion on sudden provocation).[12] While the judge told the jury that malice could be inferred or presumed [13] from the use of deadly force, he repeatedly told the jury that the burden was on the Commonwealth to prove every element of the crime of murder beyond a reasonable doubt. The judge listed malice as one of those elements and consistently defined malice as requiring the absence of justification or mitigation. The jury could have interpreted these instructions only as permitting an inference of malice from other proven facts, subject to the reasonable doubt standard. Thus, the jury must have concluded from these instructions that although inferences may be drawn and may stand as sufficient by themselves in the absence of contrary evidence; malice in the sense of the non-existence of justification or mitigation, must be established by the Commonwealth beyond a reasonable doubt. Any confusion which the jury might have had when the judge discussed the inference of malice should have been dissipated by the judge's later instructions. For example, the judge, in discussing murder in the first degree, told the jury:

> In order to establish murder in the first degree under this particular section of the statute, *it is not only necessary for the Commonwealth to prove that the killing was done with malice aforethought,* but it must also appear that the act was deliberately premeditated.

Tr. at 784–785 (emphasis added). The judge later said:

> . . . if there isn't any deliberate premeditation, *but there is malice aforethought that's been proved beyond a rea-*

sonable doubt, then you have murder in the second degree.

Tr. at 792 (emphasis added).

■ The *Gagne* jury charge, viewed in its entirety, shifted to Gagne only *the burden of production* of evidence on the issue of malice. It did not shift to Gagne *the burden of persuasion.* Nothing in *Mullaney* prohibits a state from requiring a defendant to show that there is at least some evidence, whether his or the prosecution's, on factors such as self-defense or heat of passion "before requiring the prosecution to negate this element by proving the absence of [that factor] beyond a reasonable doubt." *Mullaney, supra,* 421 U.S. at 701–702, n. 28, 95 S.Ct. at 1891 n. 28. *See Hankerson, supra,* 432 U.S. 230–231, 97 S.Ct. 2339 (Powell, J., dissenting). *See* n. 12, *supra.*

■ Gagne next contends that there was sufficient evidence of self-defense and heat of passion to raise a reasonable doubt with regard to malice and require the inference to be eliminated from the case. He argues that by permitting the inference to remain, the trial judge relieved the Commonwealth of the burden of proving malice beyond a reasonable doubt and required Gagne to prove justification or mitigation. I disagree. Even if the evidence supportive of Gagne's theory of the case was sufficient to rebut a presumption of malice, it did not concomitantly eliminate the permissible inference of malice:

> . . . although the presumption of a fact may have been dissipated, the permitted inference of that fact is not, thereby, automatically extinguished also. It may, as a survivor, have an independent life of its own. . . . The mere creation of a genuine doubt as to a fact is enough to dissipate the presumption of that fact, but that mere doubt is not

---

**12.** Inferences or even presumptions, both of which may have the effect of shifting *the burden of production,* are normally permissible. *See generally, Patterson v. New York, supra,* 432 U.S. at 230–232, 97 S.Ct. 2319 (Powell, J., dissenting). Any such inference or presumption, however, must bear a rational connection with the proved facts on which it is based, *e. g., Tot v. United States,* 319 U.S. 463, 63 S.Ct.

1241, 87 L.Ed. 1519 (1943); *Allen v. County Court,* 568 F.2d 998 (2d Cir. 1977), and it must not have the effect of shifting *the burden of persuasion* to the defendant. *Mullaney, supra.*

**13.** The trial judge apparently used the terms "presumption" and "inference" interchangeably.

enough to foreclose the permitted inference of that fact. The doubt simply places the question in the lap of the fact finder.

Gilbert v. Maryland, 36 Md.App. 196 at 205, 373 A.2d 311 at 317 (1977). The SJC found, however, and I agree, that "[t]he defendant's testimony in rebuttal of the inference of malice was not sufficient to create a reasonable doubt as a matter of law." Commonwealth v. Gagne, supra, 326 N.E.2d at 910 (footnote omitted). See Mullaney, supra, 421 U.S. at 701–702, n. 28, 95 S.Ct. 1881; Hankerson, supra, 432 U.S. at 237, n. 3, 97 S.Ct. 2339. See n. 12, supra. Moreover, read fairly, the judge's charge at Gagne's trial did no more than permit the jury to draw rational inferences. In effect, it placed the issue of malice in "the lap of the fact finder." Apparently, the jury chose not to believe Gagne's own testimony as to self-defense and provocation.

■ I next consider Gagne's contention that the SJC in its decision on his petition for writ of error, Gagne v. Commonwealth, supra, applied a more lenient constitutional standard than that applied to cases tried after the Mullaney decision. Gagne argues that the SJC has created three constitutional standards, one each for cases tried before Mullaney, after Mullaney but before Rodriguez, and after both Mullaney and Rodriguez. While Gagne does not elaborate on this argument,[14] I am convinced that it is rooted in the SJC's language in Commonwealth v. Stokes, 374 N.E.2d 87 (Mass.1978), to wit:

We add that this court will bring greater expectations, and consequently more careful scrutiny of the judge's charge as to these issues, in any case where the trial occurred after the date of Mullaney, and particularly after the date of Rodriguez.

Commonwealth v. Stokes, supra, 374 N.E.2d at 93.

I agree with Gagne that the SJC has created a triple standard for review of Mullaney claims, but I do not believe that the SJC has created a triple constitutional standard. The SJC's footnote to the language quoted above states: "This consideration is a matter of Massachusetts practice. It in no way minimizes our retroactive application of the Mullaney requirements themselves." Id., 374 N.E.2d at 93, n. 4. Apparently, the SJC recognizes that Hankerson requires that Mullaney be given full retroactive effect.[15] As a matter of Massachusetts practice, however, the SJC requires that the Massachusetts courts conduct post-Mullaney and especially post-Rodriguez trials under a standard even stricter than that imposed by Mullaney itself. I know of nothing which prohibits a state from affording its defendants procedural protection greater than that required by the Due Process Clause itself.[16] I therefore reject Gagne's triple-standard argument.

■ Finally,[17] I consider Gagne's claim that the jury's verdict was against the weight of the evidence. A writ of habeas corpus can be granted for insufficient evidence "only if there is such a void of evidentiary support as to amount to a denial of

14. I note particularly Gagne's failure to explain what the three standards he speaks of actually are.

15. In fact, the SJC applied Mullaney retroactively even before the Supreme Court decided Hankerson. E. g., Rodriguez, supra. Furthermore, the SJC has chosen not to hide behind the Supreme Court's Hankerson suggestion that a defendant's failure to object to a jury instruction in a pre-Mullaney trial may be used to insulate the conviction. Commonwealth v. Stokes, supra, 374 N.E.2d at 92. The SJC said:
[I]t would be inconsistent to hold on the one hand that a substantive rule of constitutional dimension is completely retroactive and to insist, on the other hand, that defense

counsel must have anticipated the rule in the form of an objection or exception before it may be applied retroactively.
Id. See n. 7, supra.

16. I note in this regard that I believe that the SJC, at least in the context of the case at bar, gave Mullaney full retroactive effect in compliance with the Hankerson mandate. I also note that policy considerations weigh strongly against requiring a state to apply retroactively its own rule affording greater protection to defendants than the Constitution itself requires.

17. Any contentions raised by Gagne and not herein discussed are rejected by implication.

due process." *Grieco v. Meachum*, 533 F.2d 713 at 721 (1st Cir.), *cert. denied*, 429 U.S. 858, 97 S.Ct. 158, 50 L.Ed.2d 135 (1976). I find no such void here.

For the foregoing reasons, I deny Gagne's petition for a writ of habeas corpus *ad subjiciendum*. An appropriate order shall issue.