COMMONWEALTH vs. JAMES E. DOMAINGUE.

Berkshire.    May 21, 1979. — August 10, 1979.

Present: GOODMAN, ROSE, & GREANEY, JJ.

*Self-Defense. Practice, Criminal,* Exceptions: failure to save exception; Assistance of counsel.

In a case tried subsequent to the decision in *Commonwealth* v. *Rodriguez*, 370 Mass. 684 (1976), the failure of defense counsel to object and except to the judge's inadequate charge with respect to self-defense did not amount to ineffective assistance of counsel where the charge, although incorrect, was favorable to the defendant and where there was no demonstration that the defendant was deprived of a substantial defense. [232-236]

INDICTMENTS found and returned in the Superior Court on October 5, 1976.

The cases were tried before *Apkin, J.*, a District Court judge sitting under statutory authority.

*Michael L. Altman* for the defendant.

*Daniel A. Ford*, Assistant District Attorney, for the Commonwealth.

GREANEY, J. The defendant appeals from his conviction by a Berkshire County jury on two indictments charging him with assault and battery by means of a dangerous weapon on Harmon Strong and John Brooke. G. L. c. 265, § 15A. His contentions on appeal concern the propriety of the trial judge's instruction on self-defense and his trial attorney's lack of reaction thereto.[1] He argues that the instruction was in error and that the failure of his counsel to request a proper instruction on the issue of self-

---

[1] A second assignment of error has not been briefed or argued and is deemed waived. Rule 1:13 of the Appeals Court, as amended, 3 Mass. App. Ct. 801 (1975).

defense and to object and except to the charge amounted to ineffective assistance of counsel requiring a reversal to prevent a miscarriage of justice. *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967). *Commonwealth* v. *Stokes,* 374 Mass. 583, 587-589 (1978). The Commonwealth argues, to the contrary, that the self-defense portion of the charge was proper, and asserts that the lack of objection and exception precludes relief. *Commonwealth* v. *Fluker,* 377 Mass. 123, 130-131 (1979). As to the defendant's attack on one victim (Strong) there was no evidence which would entitle him to an instruction as to self-defense. As to the second victim (Brooke), we conclude that the evidence required an instruction on the topic, but that defense counsel's failure to object and except to the instruction does not require reversal on the ground of ineffective assistance of counsel. As a result, we affirm the convictions.

The trial was short, and to frame the issues for discussion it is useful to summarize the bulk of the material evidence, the actions of defense counsel at critical times, and the judge's instructions on self-defense. The incident, culminating in the defendant's arrest and indictment, occurred on June 6, 1976, between the hours of 12:15 A.M. and 12:50 A.M. in a bar in West Stockbridge. The defendant was present in the bar carrying a hunting knife with a three inch blade "in his right rear pocket, hooked over his belt." He was with a companion who was "between six foot three and six foot four, weighed about two hundred and fifty pounds [and] had a black leather jacket with an insignia on the back of it." There were about 120 patrons present in the bar, including the victims, Harmon Strong and John Brooke, and some of their friends. About 12:15 A.M. Strong requested a song on the record player which was refused. Someone threw a cigarette at Strong. Thereafter, Strong engaged the defendant and his companion in a conversation of about five minutes' duration. In the course of the discussion, the defendant took a half gallon wine bottle, swung it at Strong and stunned him. Strong

"went after" the defendant and was thrown to the floor by the defendant's companion. Cross-examination of Strong established that the incident took place in a room in the bar used as a poolroom, that Strong was not hurt by the blow with the wine bottle, and that he needed no medical attention.

An acquaintance of Strong, John Brooke, observed what he thought was a heated argument between Strong and the defendant. Brooke testified that he saw the defendant hit Strong over the head with a bottle. Brooke left the bar area with a bottle of beer in his hand, and as he tried to get between the defendant and Strong the defendant "grabbed me with my left hand to my left shoulder, struck me in this side [left side] with the knife, and threw me on the ground." Brooke stood up, was told he was bleeding, and immediately left. He was later hospitalized and had his spleen removed as a result of the knife wound. Cross-examination of Brooke established that he "jumped in" to help Strong and began moving towards the defendant for the purpose of "interfering with something that had nothing to do with [himself]," while holding a beer bottle in his hand.

William Crowe testified that he was in the bar that night, and that prior to the incident the defendant had walked around and talked to several persons. Crowe overheard him using "four-letter words and syllables" and noticed that the defendant was carrying a knife. He observed the defendant hit Strong with the bottle, saw the defendant start to back away from Strong, and then observed the defendant "take the knife out of somebody." He then observed that person, identified as Brooke, get up quickly and leave. After this the defendant brandished the knife in his hand and "threatened everybody in the room by saying, 'Does anybody else want it? Come on.'" Strong at this point had a pool ball in his hand, but did nothing with it because "he was being restrained by several people." The defendant then put the knife away, picked up pool balls and "made motions to throw them

[but] did not throw them." Cross-examination established only that Crowe had a pool cue in his hand but did nothing with it.

Chad McCormick was also present in the bar that night and testified that shortly after 10:30 P.M. the defendant was "acting quite boisterous" and interfered with the pool game McCormick was playing.

Two other witnesses were called by the Commonwealth but contributed nothing, either in direct or cross-examination, to the events of the evening as previously developed.

The defendant gave testimony, and professed that during the episode he was taken with drink, having consumed in the course of the day and evening three half gallons of wine, "some beer and . . . a half pint of Southern Comfort." He only vaguely remembered a conversation with Strong. He had no recollection at all of hitting Strong with a bottle or of "sticking" Brooke with a knife. He last recalled being told to leave by the bouncer; thereafter, he woke up the next afternoon and was told by his wife to "call somebody to find out what happened."

This is, in effect, all of the evidence presented at the trial. In preparation for the judge's charge, defense counsel requested instructions on self-defense and insanity.[2] Defense counsel then argued to the jury that Strong had not been assaulted, that Brooke had attacked the defendant, and that the defendant had retaliated because he was in "mortal fear." He also told the jury that as a result of voluntary intoxication the defendant was incapable of forming any criminal intent and the "possibility" existed that "Mr. Domaingue thought he was acting in self-de-

---

[2] The requested instructions read as follows: "1. If you find the Defendant was acting in self-defense in either of these cases, you must find him 'not guilty'. 2. If you find that the Defendant, at the time of these alleged offenses, had a mental disease or defect which caused him to lack substantial capacity either to appreciate the criminality (wrongfulness) of his conduct, or to conform his conduct to the requirements of the law, then you must find him 'not-guilty'."

fense . . . ." The Commonwealth made appropriate coun-
tervailing argument. The judge instructed the jury on the
usual matters, including the substantive elements of the
crime charged and the Commonwealth's burden of estab-
lishing guilt beyond a reasonable doubt, emphasizing at
least twice that the Commonwealth bore this burden as
to each and every element of the crime under considera-
tion. His instructions on the topic of self-defense are set
forth in the margin.[3] At the conclusion of the charge,
defense counsel took exception to the judge's failure to
instruct the jury in accordance with his request on the
topic of insanity. No objection or exception was lodged
against the instruction on self-defense.

The defendant, represented now by counsel other than
his trial counsel, recognizes that since these cases were
tried subsequent to the decision in *Commonwealth* v.
*Rodriguez*, 370 Mass. 684 (1976) (which placed the burden
of persuasion on a justification issue on the Common-
wealth), failure to object and except to a charge on the
topic of self-defense which is thought to be erroneous will
ordinarily preclude appellate relief. This rule was strong-
ly put in *Commonwealth* v. *Fluker*, 377 Mass. 123 (1979),
a decision dealing with a charge as to justification in a
case tried after *Rodriguez*, where the court observed that
"the administration of criminal justice is badly served
when serious allegations of error in trial or pre-trial rul-

---

[3] "There was some evidence relative to self-defense. And, in this
particular case it's for you, Mr. Foreman, ladies and gentlemen of the
jury, to determine whether or not the defendant acted in self-defense.
Let me just briefly give you some insight on the law of self-defense.

"Self-defense is the legal justification for conduct that would other-
wise constitute crimes, such as assault and battery, false imprison-
ment or homicide, were it not for the fact that its purpose is to defend
one's person from unlawful acts which may result in offensive contact,
illegal confinement or bodily harm.

"Thus, the law does not permit retaliation in conduct as unlimited
when greater fear or care shall permit are used than are necessary,
and the response may not be limited to the lightest amount of force
or the least adequate means."

ings are asserted for the first time at the appellate level." *Id.* at 131, quoting from *Commonwealth* v. *Collins*, 374 Mass. 596, 601 (1978).

Seeking a detour around this barrier, the defendant claims that he was ineffectively assisted by his trial counsel. Quite recently the standard for measuring effective assistance of criminal counsel has been formulated in these terms: "whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defense." *Commonwealth* v. *Rondeau*, 378 Mass. 408, 412 (1979), quoting from *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). See also *Osborne* v. *Commonwealth*, 378 Mass. 104, 109 (1979), (conduct "within the range of competence demanded of attorneys in criminal cases"). This is essentially the same test applied by the majority of the Federal Courts of Appeal (*Commonwealth* v. *Rondeau, supra* at 411 n.3), including the First Circuit ("reasonably competent assistance," *United States* v. *Bosch*, 584 F.2d 1113, 1121 [1st Cir. 1978]). The test envisages a two-step inquiry, a showing of incompetence of counsel, and a demonstration of prejudice resulting therefrom. *Commonwealth* v. *Rondeau, supra* at 412. Like all tests for effectively solving legal problems, it cannot be applied mechanically — for the law is not geometry — but instead it requires "a discerning examination and appraisal of the specific circumstances of the given case" (*Commonwealth* v. *Saferian, supra* at 96), with the realization that "the pressure cooker of the courtroom makes errorless representation improbable, if not impossible ... since the determination of whether there have been errors is made by a court far removed from the heat of trial combat and with the time necessary to make a reasoned judgment." *United States* v. *Bosch, supra* at 1121.

Assessing the defendant's ineffective assistance claims
in light of these factors, we conclude that the two pronged
test discussed above has not been met. The Common-
wealth's case against the defendant was compelling, and
trial counsel was left with few cards to play. As to the
victim Strong, there was no evidence which would have
warranted any instruction on the issue of self-defense
because there was no view of the evidence which would
have supported any conclusion other than the fact that
Strong was the victim of an unprovoked attack by the
defendant. *Commonwealth* v. *Costa*, 360 Mass. 177, 184
(1971) (defendant not entitled to a charge on a hypothesis
not supported by the evidence). Defense counsel per-
ceived this state of the evidence as to Strong, kept his
cross-examination of this victim brief, and chose instead
to argue that the assault on Strong was so minimal as not
to amount to criminal conduct. The representation pro-
vided by defense counsel on this aspect of the case was
effective and would lead in any event to our affirmance
of the conviction on this indictment apart from any lapse
on counsel's part with reference to the second indictment.

As to the victim Brooke, trial counsel apparently real-
ized that the defendant appeared very much to be the
aggressor throughout, that the evidence as to justifica-
tion was weak, and that his client could be of little help
because he lacked any memory as to the events of the
evening in question. Trial counsel artfully cross-exam-
ined Brooke to establish just enough to require an in-
struction on self-defense. Cross-examination of the re-
maining Commonwealth witnesses was aimed at keeping
the issue of justification alive without worsening the de-
fendant's plight; it succeeded in this goal. Armed with
some evidence on justification, counsel adequately ar-
gued the issue of self-defense to the jury and requested
instructions on that issue and another. The cryptic
charge he received was, upon analysis, inadequate. It did
not clearly specify that the Commonwealth bore the bur-
den of persuasion on the question of justification — an

instruction required since *Commonwealth* v. *Rodriguez*, 370 Mass. 684 (1976). It is also vulnerable to the criticism that it is unclear. But despite its unintelligible overtones, it tilted in the defendant's favor when it indicated, incorrectly in our opinion,[4] that the defendant might have been warranted in using deadly force to repel Brooke's attempt to break up the argument ("the response may not be limited to the lightest amount of force or the least adequate means"). The record is consistent with the view that defense counsel may have sensed that he had obtained more than was deserved as to the substantive law of justification, and that to press further by way of objection and exception might have only exposed the transparency of his defense. Significantly, on the issue of effective assistance, counsel claimed an exception to the judge's failure to give his second requested instruction, thereby preserving the defendant's rights on that point. This is some indication that trial counsel acted purposely in taking what he received on self-defense rather than running the risk of exposing his client to a clearer, but much less helpful, instruction.

Finally, even if we were to accept the defendant's views that the instruction requested on self-defense indicated trial counsel's ignorance of the burden of persuasion principles on that issue (a lapse which would ordinarily fall below what is expected of reasonably skilled counsel be-

---

[4] The governing principles as to self-defense have been outlined in such cases as *Commonwealth* v. *Houston*, 332 Mass. 687 (1955); *Commonwealth* v. *Kendrick*, 351 Mass. 203 (1966); *Commonwealth* v. *Lacasse*, 365 Mass. 271 (1974). They were discussed at length in *Commonwealth* v. *Shaffer*, 367 Mass. 508 (1975). Generally speaking, before a deadly weapon can be used to defend oneself, it must appear that the person using the weapon had a reasonable apprehension of great bodily harm and a reasonable belief that no other means would suffice to prevent such harm. *Commonwealth* v. *Houston, supra* at 690. Only as much force as is reasonably necessary to repel the attack can be employed. Furthermore, the right to use deadly force by way of self-defense is not available to one threatened until he has availed himself of all reasonable and proper means in the circumstances to avoid combat. *Commonwealth* v. *Shaffer, supra* at 511.

cause a competent advocate should be conversant with the clear law of the case, substantive and procedural) and that this lapse accounts for the failure to object to the instruction given, we still would not hold the representation ineffective because there is no demonstration that the defendant was deprived of a substantial defense. *Commonwealth* v. *Rondeau, supra* at 413. To the contrary, a discerning examination of the record reveals that, overall, trial counsel's actions preserved the only tenuous defense available and that the instruction, with some benefits for the defense, did not adversely influence the jury's appraisal of the meager self-defense testimony as to the confrontation between the defendant and Brooke. *Commonwealth* v. *Freeman*, 352 Mass. at 564. In summary, the record demonstrates that "the basic trouble from the defense standpoint was weaknesses in the facts rather than any inadequacy of counsel." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 111 (1977).

*Judgments affirmed.*