Commonwealth *vs.* Edward Klein.

Hampden.    April 4, 1977. — June 22, 1977.

Present: Hennessey, C.J., Quirico, Braucher, Wilkins, & Abrams, JJ.

*Arrest,* Use of force, Private citizen's right to arrest.  *Words,* "Deadly force," "Dangerous weapon."

At the trial of indictments for assault and battery by means of a dangerous weapon, the defendant was not entitled to a directed verdict of not guilty on the ground of self-defense where evidence warranted a finding either that he had not acted in self-defense or that he had used excessive force in the circumstances. [827-828]

This court establishes as the law of Massachusetts with respect to the right of a citizen to use deadly force in arresting a felon the rules as found in § 3.07 of the Model Penal Code. [830-831]

The limits established by this court on the right of a citizen to use deadly force in arresting a felon were not applied retroactively to the defendant who had shot at two men fleeing after breaking into a drug store. [833-834]

Indictments found and returned in the Superior Court on October 18, 1974, and November 4, 1975.

The cases were tried before *Moriarty,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Frederick S. Pillsbury* for the defendant.

*L. Jeffrey Meehan,* Special Assistant District Attorney, for the Commonwealth.

Hennessey, C.J.   The defendant, a dentist residing in Springfield, was found guilty by a jury of charges in two indictments. One indictment charged him with assault and battery by means of a dangerous weapon (a firearm) on Napoleon J. LaDue; the other indictment charged the same offense against John Savageau. G. L. c. 265, § 15A. Both offenses were alleged to have occurred on August 1, 1973. It is undisputed that the defendant shot and

wounded the two men after they had in the nighttime broken into a drug store located across the street from the defendant's home. The defendant telephoned the police, and after a time went outside his home, armed with a pistol, and the confrontation occurred which gave rise to these indictments.

We hold that the judge charged the jury correctly in this case, as judged in light of principles of law which we in this case adopt governing the right of citizens to use deadly force in attempting to effect the arrest of felons. Further, we conclude that the jury were warranted in returning guilty verdicts on the evidence as considered in light of the judge's instructions to them. Nevertheless, since we are now expounding these rules of law for the first time in this Commonwealth, we also hold that the rules should not be applied retroactively against this defendant. Consequently, we are ordering that judgments of not guilty be entered as to both indictments.

We summarize the evidence most favorable to the Commonwealth, under the established principle that the jury were entitled to credit and accept this evidence to the exclusion of evidence favorable to the defendant. See *Commonwealth* v. *Kelley*, 370 Mass. 147, 149-150 (1976). The evidence most favorable to the Commonwealth came from certain police officers and Napoleon LaDue, one of the two men who were wounded by the defendant's gunfire.

Napoleon LaDue testified[1] that in the early morning hours of August 1, 1973, he and John Savageau went to Sims Drug Store on Allen Street in Springfield, Massachusetts, with the intention of breaking into the store to steal money and cigarettes. They first attempted to smash the wire and glass window in the door with a tire iron, but were unsuccessful and discarded the tire iron by the side of the door. They found a stone and managed to smash the window by propelling the stone inside.

Both LaDue and Savageau then entered the store through the broken window. LaDue took some change

---

[1] The second man who was wounded (Savageau) did not testify.

from the cash register and gathered some cartons of cigarettes. While LaDue was near the cash register and Savageau by the cigarettes, LaDue heard shots coming into the store and ran to the back of the room. After the shooting ceased, Savageau, followed by LaDue carrying cigarettes, ran to the broken door and jumped outside. Savageau was not carrying cigarettes. LaDue was a few seconds behind him. Once Savageau went through the door LaDue heard more shots. As he emerged from the store LaDue fell, but retrieved the cigarettes and began to run. While LaDue was running back along the building toward some railroad tracks he heard a shot and was struck in the arm causing him to drop the cigarettes. He ran a few more feet and was struck in the side by another bullet.

LaDue testified that he never crossed Allen Street in front of the store, that he never threw anything at anyone, and that he never saw who was shooting. LaDue caught up to Savageau near the railroad tracks, and Savageau indicated that he too had been shot. Savageau had a bullet wound in his elbow. LaDue testified that he never heard any sort of warning or an order to stop before or during the shooting. Finally, LaDue testified that, although he did not know who was shooting at them, he was afraid it was the police.

Springfield police Officer Donald LaDue[2] testified that he and Officer Sakowski responded to a radio dispatch concerning a break at Sims Drug Store at approximately 1:55 A.M. on August 1, 1973. On the basis of previous experience with breaks at that particular store, Officers LaDue and Sakowski chose to go along Amity Court while another patrol car proceeded along Warehouse Street to intercept the thieves on their expected route of escape, rather than going directly to the store. On their arrival at the drug store the officers saw that the upper portion of the entrance door was broken and there was a bullet hole in the lower portion. They also found cigarettes

---

[2] A coincidence in names with the first witness.

strewn about the sidewalk and street some eight feet away
from the store entrance. Both officers observed a tire iron
by the door and a stone inside the door. At that time the
officers were aware that fellow policemen had found LaDue
and Savageau, both bleeding, in the vicinity of the railroad
tracks, and were taking them to a hospital. Officer Sa-
kowski saw a pool of blood inside the store.

While the policemen were making these observations
the defendant appeared. After one of the officers men-
tioned the bullet hole, the defendant responded that he
had seen the two thieves break in and he had called the
police. Because the police failed to appear, the defendant
told the officers that he took his Luger pistol and went
into the street where he intercepted the thieves coming
out of the store. He stated that he stood in the road and
told them to stop or he would shoot. The defendant said
that one of the thieves threw cigarettes at him and he
fired two shots hitting one of the men, and they went
back into the store. He stated he turned to go to his house
to call the police again, and when he reached the tree belt
in front of his house he heard a noise. The defendant told
Officers LaDue and Sakowski that when the two reap-
peared he leaned against a tree to steady himself and fired
seven more shots at the two thieves as they were running
alongside the building.[3] He said that he then returned to
his house and, after emptying his gun, he called the police
again. The defendant also told Officer Sakowski that there
had been a break at Sims Drug Store two nights pre-
viously when the police failed to catch the thieves, and
that he was sleeping downstairs in his den with his gun
nearby.

The defendant's testimony before the jury differed in
important respects from the police version of his state-
ments immediately after the incident. In summary, he

---

[3] From this statement of the defendant, together with other evidence,
the jury were warranted in inferring that the defendant shot and
wounded the two men as they were running away from the scene and
not, as the defendant later testified, running toward him.

testified to firing the shots at the two men as they ran toward him, one carrying a tire iron and the other carrying an object which the defendant thought was a gun. He also testified that he saw the men break into the store; that his purpose in going out of his house with a gun was to make a citizen's arrest of the two men; and that before he fired the shots he shouted at the men to put their hands up and stand where they were, that they were under arrest.

1. The central question in this case is whether the defendant was justified in using deadly force. We define deadly force as force intended or likely to cause death or great bodily harm. This tracks with our long-standing definition of a "dangerous weapon," viz.: an instrument that is likely to produce death or serious bodily injury. *Commonwealth* v. *Farrell*, 322 Mass. 606, 615 (1948). Clearly the defendant in this case used deadly force in firing shots from a handgun.

The defendant's first contention is that his conduct in shooting the two men was justifiable on the ground of self-defense, and that on this ground he was entitled to directed verdicts of not guilty. The judge properly instructed the jury that, the defendant having introduced evidence that he acted in self-defense, the burden of proving beyond a reasonable doubt that he was not justified in his use of deadly force to defend himself rested on the Commonwealth. *Commonwealth* v. *Rodriguez*, 370 Mass. 684, 692 (1976). It is clear to us that the judge correctly ruled that the defendant was not entitled to directed verdicts of not guilty on the ground of self-defense.

The jury were instructed in substance that, in order to create a right to defend oneself with a dangerous weapon likely to cause serious injury or death, it must appear that the person using the weapon had a reasonable apprehension of great bodily harm and a reasonable belief that no other means would suffice to prevent such harm. See *Commonwealth* v. *Kendrick*, 351 Mass. 203, 211 (1966); *Commonwealth* v. *Houston*, 332 Mass. 687, 690 (1955). Although there was some testimony by the defendant from

which the jury could have concluded that the defendant acted reasonably in an attempt to prevent great bodily harm to himself, there was also evidence which warranted the jury in deciding that the defendant did not act in self-defense at all. The testimony of Napoleon LaDue tended to negate the claim of self-defense. Also, the defendant himself stated in substance to the police on the night of the incident that he shot the two men, not as they were attacking or threatening him, but as they were escaping from the scene.

Considering the jury's privilege to accept or reject evidence selectively, there was ample basis for them to reject (as they obviously did) the defendant's claim of self-defense, either on the basis that the defendant was not under attack at all, or on the ground that he used excessive force to defend himself in the circumstances. There was evidence which, if believed, supported either conclusion.

2. We turn now to consideration of the defendant's claim that he was justified in using deadly force to prevent the escape of the two men from his attempt to make a citizen's arrest.

The defendant's arguments as to citizen's arrest are three in number. First, he contends that he was entitled on this ground to directed verdicts of not guilty. Second, he says that he is entitled at least to a new trial because the judge's charge to the jury was in error as too restrictive in its definition of the defendant's rights in the circumstances of this case. The third contention is that the law applicable to the citizen's right to use deadly force in arresting a felon has never been expounded in this Commonwealth. Therefore, the defendant says that, if he acted excessively in light of the applicable law as decided in this case, that law cannot fairly be applied retroactively to his detriment.

In a few instances, this court has considered the broad issue of the use of excessive force in effecting an arrest. *Commonwealth* v. *Lussier*, 333 Mass. 83, 92-93 (1955).

*Commonwealth* v. *Young,* 326 Mass. 597 (1950). *Powers* v. *Sturtevant,* 199 Mass. 265 (1908). *Commonwealth* v. *Cheney,* 141 Mass. 102 (1886). *Commonwealth* v. *Presby,* 14 Gray 65 (1859). *Commonwealth* v. *Goodwin,* 3 Cush. 154 (1849). However, it is true, as the defendant contends, that we have never clearly set the limits of the arresting citizen's right to use deadly force.

Thus, we must consider in this context what rules of law will best serve the public interest in this Commonwealth. Our common law has long recognized a private citizen's right to arrest. *Commonwealth* v. *Lussier,* 333 Mass. 83, 92 (1955). Nevertheless, limits must be set, as to the use of deadly force, against the dangers of uncontrolled vigilantism and anarchistic actions (cf. *Commonwealth* v. *Mahnke,* 368 Mass. 662 [1975], cert. denied, 425 U.S. 959 [1976]), and particularly against the danger of death or injury of innocent persons at the hands of untrained volunteers using firearms. In our view, for example, there would be no wisdom in approving the unqualified right of a private citizen to use deadly force to prevent the escape of one who has committed a crime against property only.[4]

Some jurisdictions have adopted such limiting rules. See 32 A.L.R.3d 1072-1077, Annot., 1078-1119 (1970). In *Commonwealth* v. *Chermansky,* 430 Pa. 170 (1968), for example, it was held that the prerequisites to justify the use of deadly force by a private person in order to effect the arrest or prevent the escape of a felon are that the person must be in fresh pursuit of the felon and that he must give notice of his purpose to make the arrest for the felony if the attendant circumstances are themselves insufficient to warn the felon of the intention of the pursuing party to arrest him; that such felony must actually have been committed by the person against whom the force

---

[4] Consider, for example, the case of a person who has stolen a bicycle from a building and is attempting to escape. The crime is a felony (stealing in a building; G. L. c. 266, § 17); yet the policy which forbids the use of gunfire to prevent the escape is a sound one.

is used; *and the felony must be one which normally causes or threatens death or great bodily harm.*[5]

We have examined comparable law elsewhere, and we think the relevant provisions of the Model Penal Code will best serve this Commonwealth. These provisions were adopted after extensive debate among knowledgeable and distinguished contributors. In the past we have relied on portions of the code to clarify vague areas of our criminal law. See *Alegata* v. *Commonwealth,* 353 Mass. 287, 304 (1967). Accordingly, we establish as the law of Massachusetts the rules (in so far as they are material to the instant case[6]) as found in § 3.07 of the Model Penal Code (Proposed Official Draft 1962). They are as follows:

"Section 3.07. Use of Force in Law Enforcement.

"(1) *Use of Force Justifiable to Effect an Arrest.* Subject to the provisions of this Section and of Section 3.09, the use of force upon or toward the person of another is justifiable when the actor is making or assisting in making an arrest and the actor believes that such force is immediately necessary to effect a lawful arrest.

"(2) *Limitations on the Use of Force.*

"(a) The use of force is not justifiable under this Section unless:

"(i) the actor makes known the purpose of the arrest or believes that it is otherwise known by or cannot reasonably be made known to the person to be arrested; and

"(ii) when the arrest is made under a warrant, the warrant is valid or believed by the actor to be valid.

"(b) The use of *deadly force* [emphasis supplied] is not justifiable under this Section unless:

"(i) the arrest is for a felony; and

---

[5] The Pennsylvania court, at 173-174, included, among such felonies, the crimes of treason, murder, voluntary manslaughter, mayhem, arson, robbery, common law rape, common law burglary, kidnapping, and assault with intent to murder, rape, or rob.

[6] In this case we decide the issues only as they concern a private citizen making an arrest, although § 3.07 of the Model Penal Code is in most respects applicable to peace officers as well.

"(ii) the person effecting the arrest is authorized to act as a peace officer or is assisting a person whom he believes to be authorized to act as a peace officer; and

"(iii) the actor believes that the force employed creates no substantial risk of injury to innocent persons; and

"(iv) the actor believes that:

"(1) the crime for which the arrest is made involved conduct including the use or threatened use of deadly force; or

"(2) there is a substantial risk that the person to be arrested will cause death or serious bodily harm if his apprehension is delayed."[7]

We further hold that, since the right of the defendant to arrest and prevent the escape of the victims was raised in the evidence, the burden of disproving this defense beyond a reasonable doubt rested on the Commonwealth. See *Commonwealth* v. *Rodriguez,* 370 Mass. 684 (1976).

The judge's instructions to the jury in this case were, in most important respects, consistent with the rules of the Model Penal Code quoted above. He charged in substance that deadly force could not be used to effect the arrest or prevent the escape of one who had committed a felony concerned with property only.

As measured by the principles which we have now established and the judge's charge, it is clear that the Commonwealth met its burden of proving beyond a reasonable

---

[7] The American Law Institute's Model Code of Pre-Arraignment Procedure (1975) carried forward the determinations of the Institute in § 3.07 of the Model Penal Code regarding the use of force and of deadly force in making an arrest. In summary, § 120.7 of the Model Code of Pre-Arraignment Procedure provides that a law enforcement officer authorized to make an arrest may use such force as is reasonably necessary to effect the arrest, and the officer may use deadly force only if (a) the arrest is for a felony; (b) the officer reasonably believes that the force employed creates no substantial risk to innocent persons; and (c) the officer reasonably believes that (1) the crime for which the arrest is made involved conduct including the use or threatened use of deadly force; or (2) there is a substantial risk that the person to be arrested will cause death or serious bodily harm if his apprehension is delayed.

doubt that the shootings were not justified.[8] There was evidence which tended to show that, even though the victims had been engaged in a serious crime, it was a crime concerned with property only and entailed no threat of death or great bodily harm.[9] Thus, under the rules of law that we have established here, the guilty verdicts were clearly warranted over the defendant's claim of justification.

3. We now consider the defendant's argument that the state of the law at the time of the occurrence of this incident in 1973 was such that a reasonable man, with knowledge of the law, would be led to believe that a pri-

[8] The issue presented in this case is a narrow one: whether deadly force can be used to prevent the flight from arrest of persons who have committed crimes concerned with property only. It is probably useful to stress some of the issues with which we are *not* concerned here.

For example, this is not a case involving physical resistance to arrest. Almost inevitably, principles relating to self-defense are involved in such a case. We have said that the person attempting a valid arrest has the right to use the force which is reasonably necessary to overcome physical resistance by the person sought to be arrested. *Powers* v. *Sturtevant,* 199 Mass. 265, 266 (1908). See *Commonwealth* v. *Young,* 326 Mass. 597, 602 (1950) (deadly force). Cf. *Commonwealth* v. *Martin,* 369 Mass. 640, 651-652 (1976); *Commonwealth* v. *Kendrick,* 351 Mass. 203, 210-212 (1966) (manifestly disproportionate force).

Likewise, we do not face here the issue of the right of the person attempting an arrest to *carry* a gun or other dangerous weapon, whatever the nature of the crime which gave rise to the right of arrest. The likelihood of a violent confrontation and a consequent necessity for self-defense by the person making the arrest are factors to be considered in such a case.

Finally, in so far as the defendant's assertion that he was entitled to directed verdicts of not guilty is concerned, the instant case is not concerned with the *protection* of property. The jury were warranted in concluding that the wounding of the two men occurred after the crime involving the drug store. See, e.g., the provisions in the Model Penal Code concerning the protection of property, particularly § 3.06 (3) (d), and the justification of the use of deadly force to resist an unlawful attempt to dispossess an owner of his dwelling, or to prevent an act of arson, burglary, or other act of felonious theft or property destruction.

[9] The felony was that of breaking and entering with intent to commit a felony, or larceny in a building. There were no occupants, owner or otherwise, in the building at the time. If the crime had involved a dwelling house the threat of death or great bodily harm should be presumed, whether or not it was shown that there were actually occupants in the house at the time of the crime.

vate person would have the right to use such force as was necessary, including deadly force, to effect the arrest or prevent the escape of a person who committed a felony in his presence.

It is true that sometimes, even in a case of first impression, common law standards of criminality not previously defined are applied against a defendant. In some cases it can fairly be said that the defendant knew of the "possible criminality" of his conduct. *Mullaney* v. *Wilbur*, 421 U.S. 684, 690 n.10 (1975). It is not necessary that courts, interpreting the common law, be able to point to a decided case exactly similar as to its facts. *Commonwealth* v. *Henson*, 357 Mass. 686, 690-694 (1970). *Bouie* v. *Columbia*, 378 U.S. 347, 356 (1964). W. Clark & W. Marshall, Crime § 1.03, at 21 (7th ed. 1976).

In other cases the circumstances are such that new standards are held in fairness not to be applied retroactively against a defendant. See *Commonwealth* v. *Chermansky*, 430 Pa. 170, 171 (1968); cf. *Commonwealth* v. *Orlando*, 371 Mass. 732, 734 (1977). In some instances such retroactive applications have been held to be violative of the due process clause of the United States Constitution. *Marks* v. *United States*, 430 U.S. 188 (1977). *Lanzetta* v. *New Jersey*, 306 U.S. 451 (1939).

We conclude that, in the circumstances of this case, the standards we have now established should not be applied retroactively. We reach this conclusion through considerations of fairness; it cannot fairly be said that the defendant was on notice of the possible criminality of his conduct. We need not consider whether, additionally, a retroactive application of the law to the defendant might be violative of his constitutional right to due process of law.

The defendant was aware that he had a citizen's right of arrest; the felony was committed in his presence;[10] it could fairly be said that there was evidence that he gave

---

[10] We have said that a private person may lawfully arrest one who *in fact* has committed a felony. *Commonwealth* v. *Lussier*, 333 Mass. 83, 92 (1955).

notice to the two men that he intended their arrest and that he was assisting the police (whom the defendant had called) by attempting to prevent the escape of the men. He met the standards for justification of his use of the firearm (as we now for the first time establish them) in all respects except that the felons were not themselves engaged in a crime which threatened death or great bodily harm.

In these circumstances the defendant should not be held to have had knowledge of the "possible criminality" of his conduct (see *Mullaney* v. *Wilbur, supra*), and the law should not be applied retroactively against him. His judgment was undoubtedly poor; his conduct could justly be called rash. Nevertheless his intent was to assist the cause of law enforcement; on the evidence, no lawless motive or malicious spirit can be attributed to him.

In the interest of curbing the promiscuous use of firearms, and the unnecessary and dangerous use of deadly force in the community, we have now set limits applicable to arrests by private persons. The defendant can be held to have used excessive force only in light of the fact that the felons here were not themselves engaged in the use or threatened use of deadly force in their crimes directed against the drug store. Public knowledge of this somewhat subtle requirement of the law, a requirement which we shall apply in the future, should not be charged against the defendant retroactively.

4. Since the Commonwealth had the burden of disproving, by proof beyond a reasonable doubt, the defendant's assertion of justification, and, since we have concluded that he is not to be charged retroactively with the rules we have established in this opinion, it follows that in the circumstances of this case, as matter of law, the Commonwealth has not met its burden. The judgments are reversed and the verdicts set aside. Judgments of not guilty shall be entered as to both indictments.

*So ordered.*